Good morning, Your Honors. May it please the Court, Brian Pomerantz on behalf of Petitioner Kennard Davis. To affirm the District Court, this Court must do five things. First, it must ignore this Court's mandate in Davis v. Walker. Second, it must ignore the law of the case, because when the second amended petition was granted, the first amended petition was found to be timely. Third, it must ignore United States Supreme Court law in Day v. Mrs. McDonough. Fourth, it must ignore testimony of the court-appointed expert psychiatrist in the Davis competency hearing in 2011. And fifth, it must decide his competence without a hearing, without a medical professional opining on his medical records, without the added dimension of a clinical interview, and without anyone examining his medication logs. In addition to those five things, all of which this Court must do, it probably has to throw the meaning of Curiel v. Miller into flux. It probably has to potentially negate a large body of equitable tolling law. And it has to penalize Mr. Davis for objecting to the 2013 R&R, which was premised on a timely first amended petition. Because I am hopeful that the Court will not do those eight things, I'm going to discuss remedy unless this Court first has questions. Well, I certainly have some questions on equitable tolling, so I'm just speaking as one judge. I'd appreciate it if you didn't just rest on your briefs on that. So, counsel, I agree with Judge Gould, because we're talking about one day here. And for a judge like me, and speaking only for myself, who likes to get to the merits, can you show us a path to get beyond that one day? Yes, Your Honor. The one day, first off, I think Mr. Davis was incompetent for the entire period. I think he was incompetent for more than the one day. The reason we've gotten to the one day, obviously, is because of statutory tolling. But I believe he was incompetent for the entire period. Mr. Davis has been ---- Isn't there evidence in the records that he did numerous and filed numerous petitions during that period? How could you make that assertion? Judge Rogers, there is evidence in the record that numerous petitions were filed. There is not evidence that Mr. Davis filed those petitions. Mr. Davis had help with his petitions. And in numerous instances in the district court, that help's been discussed. The magistrate judge, in fact, at a certain point in the case, said, you know, we don't know who did these. We don't know whether it was a gentleman named Andre Booker who was clearly helping him and signed a number of things, or whether it was someone else. We don't know who was helping him. That's something that would have been looked at in an equitable tolling hearing back in 2009, 2010, had that hearing happened. That hearing, which was ordered by this court and from a panel that Judge Wardlaw was on, never happened because after I was appointed to the case, we had a conference with the court where the state waived timeliness. And once the state waived timeliness, that hearing was negated. Timeliness was not raised again by the state until many years later during the second amended petition. The hearing that happened in 2011, and it's in my papers, but just so we're clear in the hearing. So they never had the evidentiary hearing that we ordered back in 2009? The 2009 evidentiary hearing was never held, Your Honor. The hearing that was held in 2011 was not on the issue that this Court remanded on. The 2011 hearing was looking at his competency in 2011. It was looking at his competency in 2011 because Mr. Davis wanted me gone. He wanted myself and for Dost Doherty, now Judge Doherty, he wanted us off the case. He was making all kinds of allegations of a parade of horribles that we had allegedly done to him and claiming that there was a conflict. Judge Goldman looked at it and said, we have to figure out whether he's competent because if he is competent, then YouTube should probably be gone. And if he's not competent, then, you know, I think he could stay on the case. So we had a hearing that looked at that time period, at his present mental competency then. He was found incompetent by Judge Goldman after testimony by a court-appointed psychiatrist who I objected to. Dr. Sharma was appointed over my objection. I think he fined for the prosecution an unreasonable amount of the time, and I didn't want him appointed. But the court appointed him, and he found Mr. Davis to be incompetent. And during that hearing, I asked him the question, how long has he been incompetent? And his answer to that was that Mr. Davis, to the best of my knowledge, he has had mental problems going back to the 1990s. After that answer, the State had the chance to cross-examine him. They didn't cross-examine him on that question. They didn't even ask him any more questions on that question after that. So we have an opinion from an expert, an expert who I think favors the State, who said, I think he's incompetent since the 90s. And that's why, Your Honor, Judge Rogers, I think he's incompetent during that period. I think we can look at it and say we've had an expert opine. Now, the State's going to tell you he didn't look at the medical records from that specific period, 2005-2006, and that's absolutely correct. He didn't. But there's a long body of problems here for Mr. Davis. Mr. Davis was hospitalized as a teenager. He was hospitalized prior to trial. He was in the Tascadero at one point. When he came to trial in this case, he was found presently mentally incompetent to stand trial, and he was sent to Patton. After he was returned from Patton, he was allowed to represent himself. In what was a mess of a trial, he's had forced medication orders since as early as 1998, which came and went during this period, the 2004-2005-2006 period, he did not have forced medication. But the medical records indicate that he also wasn't taking that medication. And then he had forced medication orders beginning again in 2007 through 2010, and I don't know the current status of that. I don't know after 2010 whether he was on forced medication or not. No one's looked at that period. Could you speak briefly on the issue of waiver? That is, it seems to me in the telephonic conference with Judge Goldman, there was a very clear, explicit, at least some evidence of a clear, explicit waiver by the State. I think there were three waivers by the State, Your Honor. There were we went into that hearing thinking that we were scheduling the hearing that this Court had ordered, and that was negated when Judge Goldman asked Mr. Teddeff, are you going to be waiving the exhaustion issues and the limitations issues as to the claims that Mr. Davis filed in the two combined petitions? And the answer by Mr. Teddeff was, well, yes, as to the 06 petition, those claims are now exhausted, and the petition was timely, so I would concede those issues. I think Magistrate Goldman was surprised by this because he returned to it twice more during that hearing. He said, and would you waive the limitations and the exhaustion arguments with respect to the identical claims in the two position, two petitions? Mr. Teddeff said, correct. Finally, the Court said, it's my understanding that the claims that are raised in that first amended, in that 06 petition, now are deemed exhausted and timely, so I don't have to deal with those issues with respect to those claims in that petition. Mr. Teddeff, am I right on that? The answer, yes, you are, Your Honor. There's a clear waiver, and under Day v. McDonough, I don't understand how we'd even get past that. I don't understand why too long is an issue. Ginsburg-McDonough What does the waiver go to? Does that get us past the one-day or? Horwich I think the waiver negates the one-day. Ginsburg-McDonough The waiver was for the first amended petition or the second amended petition? Horwich The waiver was for the first amended petition, Your Honor. Ginsburg-McDonough And your argument is second amended petition relates back to the first amended petition? Horwich Half of the, I'm sorry. Ginsburg-McDonough You know where I'm going, so you can answer. Horwich And I want to save time for rebuttal, so I'm in the danger zone here. The second amended petition, half the claims related back to the first amended petition, half did not. I'd like to explain, if I have time on rebuttal, I'd like to explain it. I think the second amended petition should be heard, because I think that Mr. Davis has been disadvantaged by this waiver, and I think he's been disadvantaged by the hearing not having ever happened. We're now sitting here 12 years after he first filed a Federal petition. He first filed a Federal petition in 05, which I think was wrongly dismissed, and then he refiled in 06. And the 06 petition is the one we're looking at. But he filed these things eons ago, and to go back and do a hearing now would be extremely difficult and extremely prejudicial to Mr. Davis. How do you do a hearing 12 years later? This Court has said we don't favor retrospective hearings on competency, and the Supreme Court's done it over and over again. Drope, Dusty, Pate, in those cases you had 6 years, 1 year, and 6 years in which the Supreme Court said we can't go back and do this now, give him a new trial. Here you would be adding all those cases together. You'd be 13 years between the period and the time he's going to have a hearing. Records are gone. Witnesses have scattered to who knows where. And I – and all of this is because we didn't have a hearing that we were prepared to have when I came on the case in 2009 because of the waiver. So I think the waiver extinguishes everything. And if you want me to discuss equitable tolling more and getting past the 1 day, I'm happy to do that. There is a specific period of time in there that I think he absolutely clearly was incompetent. All right. Well, I'll give you some time on rebuttal. Thank you, Your Honor. Good morning, Your Honors. May it please the Court, Deputy Attorney General Herb Tedeff on behalf of the Respondent. It is undisputed that the petition was untimely filed. Therefore, it could only be timely if the petitioner is entitled to equitable tolling, and I'd like to address that issue first. Could you address the waiver issue? I mean, it does seem from this transcript that it was explicitly waived multiple times and that people relied on that. Thank you, Your Honor. I would like to address it. First, I would like to point out that that was not a certified issue, and we haven't had the opportunity yet to brief it. You had – you did have the opportunity to brief it. You chose not to brief it. Thank you, Your Honor. We chose not to brief it because it's uncertified. But nonetheless, the district court certainly considered that issue. There's no question that we conceded the issue of the timeliness early in the proceedings. But later, we asserted that the petition was untimely, and all the parties filed it fully, and we briefed that issue. The waiver issue is there because it's unfair to a party to bring up an issue on appeal when they didn't have an opportunity to brief it below. This issue was fully briefed. Timeliness was fully briefed. There's no unfairness here at all. The Attorney General – we made a mistake in originally conceding the timeliness of the petition, but when we found that mistake, we asserted it was untimely, and the parties got to brief it. How did you – how is there a mistake, and how is there any evidence in the record of mistake? I told the court in a brief that we had mistakenly conceded that the petition was untimely, and then we asserted – I'm sorry, that it was timely, and then we asserted it was untimely. And then there was full briefing on it, which is why we're here right now, to deal with the issue that the district court resolved, whether the petition was timely or not. This was not a situation where a petitioner was caught off guard or didn't get to brief the issue. He fully briefed the issue. And the district court also considered whether or not there was any prejudice. And in this case, the district court was able to get all of Petitioner's medical records from the relevant time period, and also look at all the pleadings that he filed, and was more than capable of making a timeliness determination based on those records without any other evidence being necessary. Petitioner has never put forth any sort of showing that something was missing or he was unable to produce evidence because of the passage of time. There's nothing in the record about that. The parties were both permitted to fully brief the issue, present the evidence that they needed to present, and the district court had ample evidence to make a ruling on the equitable tolling issue. And I would like to move on to that equitable tolling issue and point out that the time frame we're looking at is 2006. And in order to be entitled to equitable tolling under the Bills test, Petitioner would have to show that his mental illness was so severe that he didn't understand the need to timely file his petition, and that he couldn't, because of his severe mental illness, he couldn't prepare a minimally adequate habeas petition. I think if you look at the filings in 2004 to 2006, you'll see that there's no way Petitioner can possibly meet that test. He was filing numerous state habeas petitions. He filed a federal civil rights petition. He filed another federal habeas petition. He showed that he was more than competent to assert his legal rights. During the rel- This is the case, because I've had this case in front of me a couple of times. Is this the case where he had the jailhouse lawyer who was helping him with all those filings? At one point- There was a famous jailhouse lawyer that I think was- I'm unaware of that, Your Honor. There, in this record, there is some evidence that at one point during the very lengthy proceedings, an inmate named Booker assisted him for a minimal amount of the pleadings. But Petitioner filed a lot of these pleadings himself. There was a 2005 federal habeas petition where he personally prepared it and filed it. And there's no indication that somebody else was simply filing on his behalf. So again, if we look at the pleadings that he filed, in 2005 he filed a federal habeas petition where he explained that he understood that there was a one-year statute of limitations under the ADPA. And he understood principles of equitable- Can I ask you, if we are going to rely on the waiver, would you want us to order, allow you to file a supplemental letter of brief on that issue? Absolutely, Your Honor. Okay. So again, obviously the court is concerned about the waiver. I would like to point out that the district court fully considered that issue. And again- And I commend the magistrate judge for reviewing 124 pages of medical records. But he did make many findings of fact without an evidentiary hearing concerning Petitioner's medical health. And although I commend him for his diligence and thorough review, perhaps it should have been more of an adversary contest. Well, I would point out in our respondent's brief, we cited numerous federal cases where equitable tolling issues regarding mental health were resolved based on medical records before the court. And in fact, in one of those cases, Ortho v. Yates, I believe it was, this court upheld a district court's finding based simply on medical records without a hearing. But isn't this case a little bit different because the evidentiary hearing was ordered by the Ninth Circuit? No, I would like to address that. The last time that this case was here, this court ordered a competency hearing. It didn't order an evidentiary hearing about equitable tolling. It ordered a competency hearing, and in 2011, Petitioner got a competency hearing. Petitioner makes much of the fact that he didn't get what this court ordered. I respectfully disagree. He got exactly what this court ordered, which was a competency hearing. But that competency hearing concerned his competency in 2011. It did not concern his competency during the statutory period, nor did this court ever order a hearing based on equitable tolling or his mental competence during that statutory period to determine whether he's entitled to equitable tolling. So I believe that Petitioner got the hearing that was ordered, and I would also submit that that hearing really has very little, if any, relevance to the issue before this court about the timeliness of the petition. The psychiatrist opined on Mr. Davis's competency in 2011, not between 2004 and 2006. What's more, even if Petitioner isn't competent, he still has to meet the Bill's test, and he still has to show that he was unable to prepare a minimally adequate habeas petition. And I think this case is unique in that we have numerous filings by Petitioner himself during the 2004-2006 period that show he was more than capable of preparing a minimally adequate habeas petition. Well, so his 2005 petition that was dismissed because it wasn't minimally adequate. That's true. That is true. But at the same time, Mr. Davis filed numerous state habeas petitions. For example, in June of 2005, he filed a Superior Court habeas petition where he filed a motion to preserve records that had been produced at a Pitchess hearing in his case. He supported his argument with case citations, points and authorities, conclusion, exhibits. In 2004, during the statutory period, he filed a Superior Court petition where he alleged ineffective assistance of appellate counsel, where he also provided case citations and supporting argument. In March 2006, also during the statutory period, he filed a Court of Appeal petition where he alleged that his right to confrontation, his right to discover evidence, his right to speedy trial were all violated, and he provided case citations as supporting argument. And these are just some examples of the numerous habeas petitions he filed that showed he was more than capable of acting on his rights. And if a petitioner shows that he understands that there's a limitations period and he's capable of acting on his rights, he fails under the Bill's test and Holland v. Florida. He's not entitled to equitable tolling under those circumstances. And even if petitioner was receiving help that is contemplated in the Bill's test, if a petitioner is able to find help to assist him in preparing these petitions, then he doesn't get equitable tolling. And so to the extent there was some help, that does not mean that petitioner gets equitable tolling. Unless there are other issues that the court would like me to address, I will submit. There are no questions here. Okay. Thank you. Thank you. Thank you, counsel. I'll give you a minute for rebuttal. Before I discuss anything else, I may not have time to discuss anything else, but I want to point out the question of what this Court remanded for in 2009, because it's being disputed now what that was. The December 11th waiver argument that was made December 11th, 2009, that was the second hearing before judgment after remand. The first one was on November 5th, 2009, and here is what was said by Mr. Taddeff. First, just at the outset regarding the Ninth Circuit's remand for a competency hearing, it seems to me that the issue is not so much his current competency, but a determination whether he was competent when the 2006 petition was pending. And the reason being that if we have such a hearing, then we can determine retrospectively whether or not the petition was properly dismissed or not. In other words, if he was found, if it was found that he was competent in 2006, then we could say the petition was properly dismissed, and I think the petition then goes away. However, if we determine that he was incompetent then, I think that petition is still viable. So I think just at the outset, as far as what we're talking about as a competency determination, that's how I see the issue. The Court said that's how I see it also, and Mr. Taddeff said, okay. So having said that, my suggestion that I had made to Mr. Pomerantz was that we could go forward on the merits, and he goes from there suggesting that the merits come first, and Judge Goldman didn't like that. That's very different from what the State is now saying. The State's now trying to say that's not what this Court did. This Court was looking at timeliness. And there, the idea that this would be dismissed if he was competent is suggesting in that argument right there that they understood there was a timeliness element there. So to say a month later when we talked, we weren't sure, we had miscalculated, and our waiver was not an intelligent waiver, I think is betrayed by that statement. You'll find that statement, by the way, in the excerpts of record at 1240 and 1241. I'm out of time. I don't know whether the Court wants me to address some of the issues that were raised. Judge Gould, do you have any more questions? Well, I guess I have this question. I want to get you back to what you wanted to open with before I distracted you. My question is, what precisely is the relief that you want at this time? The relief is complex, Your Honor, and the relief is complex because normally were this eight years ago, the relief I would request would be a hearing. It would be a hearing into equitable tolling and looking at that issue. The problem here is so many years have passed that when we're looking at equity, and equity is fairness, when we're looking at fairness, it would be unfair for Mr. Davis to attempt to do a hearing at this point. Certainly, it's better than having his case dismissed, and I would take it, but it would be incredibly unfair. There is no reason for him to have kept materials. We don't know who the persons involved were. For me to ask my incompetent client, and let's be clear, he has a guardian ad litem at this stage. There's no question he's incompetent at this stage. To ask him, who do I talk to for a hearing so many years later? How could I possibly get answers? Okay, well, let's assume for a moment that you persuade the Court to give you one day of equitable tolling, what's the relief that the habeas petition is then seeking? The habeas petition, the merits of the petition, Your Honor, it depends on which claims come in. In the second amended petition, some of the claims involved, and there's a question as to whether these would be timely or not. Some of the questions involve his competency to stand trial and represent himself in the first place. So there's overlapping issues here involving his competency. As far as the one day, you can look at one day and say there's absolutely one day, and that day is April 19th, 2006, because the magistrate judge in the report and recommendation says, he uses as a baseline, he says, well, he was triple CMS. He wasn't EOP. He wasn't raised in level to a higher level of mental health standing during that period at all. Well, that's false. On April 19th, 2006, he was raised to EOP. He, in fact, was raised to EOP. What does EOP mean? EOP is, oh, I'm blanking. I'm sorry. There's three levels of mental health in the. Is this the highest level? The second highest. The highest is a crisis bed. And actually, when you look at the records, Judge Wardlaw, they were looking for a crisis bed. They didn't have one. They were recommending him for crisis bed and had moved him up to EOP during the period in which they were trying to find a crisis bed. The next day, they then suddenly decided he was no longer EOP and he was triple CMS. It's not clear why they decided that the next day. There's records for the entire week of problems with him. But that's one day. And that's one day that the district court ignored. And so if all we're looking for is one day, we have it. We have it based on what the magistrate judge himself said, which is, well, he wasn't even raised to EOP. But he was on that particular day. And that's in the records and it's in the briefing for you. So the remedy you want, so that you can wrap it up because you're well aware of it. The remedy I want, Your Honor, is I want the second amended petition to, that we'd be able to move to the merits of the second amended petition. Because the problem is, if you say the first amended petition is timely, but the second amended petition, we have to figure out the timeliness, you're putting us back into a How else do we get to whether the, I added claims for the second amended petition. It's not the same claims. Half relate back. And initially, Judge Goldman found in his R&R that half related back and he struck half. That was the R&R that I objected to that then led to another R&R by a different judge who said, no, this whole thing's out. And it was only- Are we just looking at this point at the claims of appellate incompetence? Or are we looking at the claim of, should he have been able to represent himself at the underlying trial? We're looking at both, both are in the petition, Your Honor. The, the, whether he should have been able to represent himself, his veretta right in, in, in the instance where he had clear mental health problems is raised in the petition, in the second amended petition by us. It is not in the first amended petition. The mental health claims as to his ability to represent himself and to be competent at trial were not raised in the first amended petition. They are raised in the second amended petition and it's logical, right? Mr. Davis doesn't understand Mr. Davis has mental health problems. So Mr. Davis doesn't raise mental health claims and nor is anyone else raising mental health claims on his behalf. So Mr. Booker and his other proxy filers were not raising those claims. All right. Thank you very much, counsel. Thank you, Your Honors. Davis v. Malfi will be submitted and we'll take up U.S. v. Cherny, Chernyovsky.
judges: Wardlaw, Gould, Rogers